USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1489 IN RE PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE Debtor. __________ EDWARD KAUFMAN, ET AL., Defendants, Appellants, v. PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, ET AL., Plaintiffs, Appellees. ____________________ ERRATA SHEET The opinion of this Court, issued on January 6, 1995, is amended as follows: In case title on cover sheet, replace "Plaintiffs, Appellants," with "Defendants, Appellants," and "Defendants Appellees," with "Plaintiffs, Appellees,".  January 9, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1489 IN RE PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE Debtor. __________ EDWARD KAUFMAN, ET AL., Defendants, Appellants, v. PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, ET AL., Plaintiffs, Appellees. ____________________ ERRATA SHEET The opinion of this Court, issued on January 6, 1995, is amended as follows: On cover sheet, replace [Hon. Ronald R. Lagueux,* U.S. ____ District Judge]" with "[Hon. Ernest C. Torres,* U.S. District ______________ _____________ Judge]". Footnote should remain the same. _____ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1489 IN RE PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor. __________ EDWARD KAUFMAN, ET AL., Defendants, Appellants, v. PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, ET AL., Plaintiffs, Appellees. __________________, APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Ernest C. Torres,* U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Robert C. Richards for appellants. __________________ Wynn E. Arnold, Assistant Attorney General, Civil Bureau, with ______________ whom Jeffrey R. Howard, Attorney General, was on brief for appellee _________________ State of New Hampshire. John B. Nolan with whom Steven M. Greenspan, Lorenzo Mendizabal, _____________ ___________________ __________________ Gary M. Becker, Day, Berry & Howard, Howard J. Berman and Greenberg, ______________ ___________________ ________________ __________ Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A. were on brief for _______________________________________________ appellees Public Service Company of New Hampshire and The Official Committee of Equity Security Holders. ____________________ January 6, 1995 ____________________ ________________________ *Of the District of Rhode Island, sitting by designation. BOUDIN, Circuit Judge. On this appeal, the appellants-- _____________ Edward Kaufman, Robert Richards, and Martin Rochman-- challenge an injunctive order issued by the federal bankruptcy court in New Hampshire, and affirmed by the district court. That order enjoined appellants from bringing a securities fraud suit against the Public Service Company of New Hampshire ("Public Service"), its committee of equity security holders, the State of New Hampshire, and others. We affirm. I. BACKGROUND The appellants in this case were common stockholders of Public Service, a New Hampshire public utility. In the 1980s, Public Service owned a nuclear power plant under construction in Seabrook, New Hampshire. Due to the Seabrook project, Public Service experienced severe financial problems and filed for Chapter 11 bankruptcy on January 28, 1988. The details of the bankruptcy proceeding are recounted in the opinion of the bankruptcy court in this case, In re Public ____________ Service Co., 148 B.R. 702, 703-09 (Bankr. D.N.H. 1992), and ___________ we confine ourselves to a brief overview. In 1989, Public Service, its committee of equity security holders and a committee representing its unsecured creditors filed with the bankruptcy court a comprehensive plan of reorganization. 11 U.S.C. 1125. In accordance with that section, the plan was accompanied by a disclosure -2- -2- statement, to be used in soliciting the plan's acceptance by holders of claims and interests, see 11 U.S.C. 1126, that ___ described the nature and consequences of the plan. Over the appellants' objections, the disclosure statement was approved by the bankruptcy court on January 3, 1990. 11 U.S.C. 1125(b). Public Service's plan of reorganization was confirmed on April 20, 1990, after six days of hearings largely devoted to the appellants' objections. 11 U.S.C. 1128-29. The plan was to be implemented in two stages, each one contingent on approval by regulatory agencies. The first step--reorganization of Public Service with certain distributions to its owners and creditors--was to take effect only if the New Hampshire Public Utilities Commission approved the plan's provisions regarding new utility rates for Public Service. See 11 U.S.C. 1129(a)(6). That ___ approval was forthcoming, a court challenge to the agency approval by appellants failed, Appeal of Richards, 590 A.2d ___________________ 586 (N.H.), cert. denied, 112 S. Ct. 225 (1991), and the _____________ reorganization occurred on May 16, 1991.1 The second stage effected a merger of Public Service with a subsidiary of Northeast Utilities, a Connecticut  ____________________ 1Appellants also sought unsuccessfully to challenge the confirmation itself in the district court, in this court and in the Supreme Court. See In re Public Service Company of ___ ________________________________ New Hampshire, 963 F.2d 469 (1st Cir. 1992), cert. denied, ______________ ____________ 113 S. Ct. 304 (1992). -3- -3- utility company selected as the winning bidder for Public Service through a competitive bidding process provided for in the plan. The merger was conditioned on the approval of the Federal Energy Regulatory Commission. That approval was also secured, despite an unsuccessful attempt at intervention by appellants in the FERC proceeding, and the merger took place on June 5, 1992. At various stages in the bankruptcy proceeding, appellants contended that the proponents of the plan had made false and misleading representations in the disclosure statement. After the confirmation but before the reorganization or merger, appellants filed a motion in January 1991 to revoke the order approving confirmation on the ground that it had been procured by fraud. The request was dismissed on the ground that it was time barred under 11 U.S.C. 1144, which permits reopening for fraud only if sought within 180 days of confirmation. After the plan was confirmed and largely implemented, Richards--who is also the attorney for the appellants--wrote a letter in March 1992 to counsel for various proponents of the plan, revealing that he intended shortly to begin a class action in the district court for the Southern District of New York. Pertinently, the enclosed draft complaint accused private plan proponents and the State of New Hampshire of violations of federal securities laws, 15 U.S.C. 78, and of -4- -4- common law fraud, based on supposed misrepresentations in the bankruptcy-court disclosure statement. Public Service, its committee of equity security holders, and the State of New Hampshire promptly brought an adversary proceeding in the bankruptcy court to enjoin the appellants from commencing the threatened action. After granting interim relief, that court in November 1992 granted the injunction. Public Serv. Co. v. Richards, 148 B.R. 702 _________________ ________ (1992). The injunction barred any future civil action by appellants challenging the bankruptcy court disclosure statement, the confirmation order or the solicitation of acceptance. The district court affirmed the injunction. Kaufman, Richards and Rochman appeal. Despite the injunction, in late November 1992 Richards, acting as the attorney for yet another Public Service stockholder, did commence the threatened fraud action against several private appellees, but not against the State of New Hampshire, in the Southern District of New York. The bankruptcy court found Richards in contempt but imposed no sanction; the district court for the Southern District of New York thereafter dismissed the complaint without prejudice. Richards has not sought review of the contempt order in this court, and we are therefore concerned only with the injunction. II. DISCUSSION -5- -5- On this appeal the appellants do not challenge the authority of the bankruptcy court to enjoin a collateral attack on its orders and proceedings. See generally Local ______________ _____ Loan Co. v. Hunt, 292 U.S. 234 (1934). Instead, they attack ________ ____ the injunction on the merits, arguing that neither the safe harbor provision of the Bankruptcy Code nor res judicata _____________ principles forestall the subsequent fraud action in the Southern District of New York. These were the principal bases for the injunction issued by the bankruptcy court, although it also held that a suit against New Hampshire was barred by the Eleventh Amendment. The Bankruptcy Code provides that a chapter 11 reorganization may be voted upon by holders of claims and interests, based on a disclosure statement approved by the court after notice, hearing and a determination that the statement contains adequate information. 11 U.S.C. 1125(b), 1126. The adequacy of the disclosure statement is determined under the Bankruptcy Code and "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation . . . ." 11 U.S.C. 1125(d). The safe harbor provision, 11 U.S.C. 1125(e), then states: A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the -6- -6- plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities. The Bankruptcy Code provides further that the plan cannot be confirmed by the court unless, inter alia, the plan __________ has been proposed "in good faith and not by any means forbidden by law." 11 U.S.C. 1129(a)(3). If a plan is confirmed after the necessary vote, the confirmation may be revoked only if, within 180 days after confirmation, a party in interest so requests and the court thereafter finds that the confirmation order was "procured by fraud." 11 U.S.C. 1144. These provisions are the framework for the present dispute. The heart of the appellants' fraud complaint filed in the Southern District of New York was a two-pronged attack on the disclosure statement used in the reorganization of Public Service. The first prong challenged the disclosure statement's description of the authority of the New Hampshire Public Service Commission to impose unfavorable rates on Public Service if the reorganization failed. This contingency was pertinent to the plan's approval because the treatment of the Seabrook investment was in dispute and the -7- -7- plan embodied a negotiated compromise on utility rates to forestall litigation. See 11 U.S.C. 1129(b)(6). ___ The disclosure statement contained some general statements about the power of a utility commission to refuse to include in the utility's rate base imprudent investment-- an issue of central importance in relation to Seabrook--and to temper any required rate increase (e.g., by using a phase ____ in) to avoid "rate shock" to customers. Appellants' theory in their complaint was that the disclosure painted too pessimistic a picture of the legal rules that would constrain Public Service rate increases if the reorganization were rejected and the rate level had to be litigated in court. The second prong of the attack on the disclosure statement concerned the merger of Public Service into a subsidiary of Northeast Utilities. The disclosure statement offered ranges of projected value for the common and preferred stockholders of Public Service, assuming (in the alternative) that the second-phase merger were or were not to be approved. Not surprisingly, the "with" merger assumption generated slightly higher values. The appellants say that without the merger Public Service might have collapsed, the stockholders would have been far worse off, and therefore the ___ stockholders were not adequately warned of a material threat of financial harm. (The merger, of course, did occur). -8- -8- Appellants also say that the small differential between the "with" and "without" merger projections concealed the vast benefit that the merger synergies would provide to the new owner. If the Public Service stockholders had known of these benefits, say appellants, they might well have demanded a greater share and rejected the proposed plan. To show that there was a threat that Public Service would collapse absent the merger, and that great synergies would be achieved from it, appellants point to several statements to this effect by the regulatory agencies that ultimately considered the merger. Few public utility lawyers would be greatly disturbed by the description of state agency powers given in the disclosure statement; although there is plenty of room for disagreement about nuance, the suggestion of fraud in this respect is very far-fetched. As for the financial projections, the complaint does not even begin to show that they were wrong, let alone fraudulent; at most, it asserts some inconsistency with later agency appraisals. Still, we are not concerned here with a motion to dismiss and will assume arguendo (albeit with a good deal of skepticism) that ________ we are dealing with a serious, although entirely unproven, fraud complaint. If we were faced with a case of what the bankruptcy judge called "secret fraud," appellants might have an -9- -9- arguable basis for their collateral attack. True, section 1125(d) could be read very broadly to make any fraud claim disappear since that section provides that the adequacy of a disclosure statement is "not governed by any otherwise applicable nonbankruptcy law." On the other hand, one may doubt that Congress meant in all circumstances to wipe out every damage remedy against a defrauder who managed to deceive everyone, including the bankruptcy court. The very existence of the safe harbor provision suggests otherwise. Similarly, the safe harbor provision presents puzzles of its own. On its face, it immunizes only good faith "solicit[ations]" for approval or rejection and "participat[ion]" in securities transactions; it says nothing explicit about false disclosure statements; even if read more broadly, as is likely justified, it does not protect bad faith conduct. Nor does it say where and how good faith is to be determined; the bankruptcy court did make good faith findings in approving the plan, but (as we explain below) their significance is itself open to dispute. In our view--and we have little precedent to guide us-- this case can be disposed of based on a single, relatively narrow circumstance: the attacks now made on the disclosure statement were in part made in the reorganization proceeding itself; and, to the extent that they were not made there, -10- -10- they could and (if meritorious) should have been made there.2 It is this circumstance that led the bankruptcy judge to distinguish the possibility of "secret fraud," that is to say, fraud of such a character that it could not reasonably be uncovered until after the confirmation. There is no secret fraud here. The description of state utility commission powers not only could have been disputed during the approval of the disclosure statement but was in fact challenged by appellants. As for the financial projections, they were open to attack at the same time, and appellants point to nothing in the way of newly discovered evidence that could explain why the criticisms now made could not have been litigated at the time. To refer summarily to a couple of conclusory statements from regulators about the need for, or benefits of, the merger does not remotely justify the delay. The bankruptcy judge found, in issuing the injunction, that the appellants "did raise or had the opportunity to raise" in the reorganization all of the issues that they now seek to litigate. 148 B.R. at 718. It is implicit in this finding that the appellants by exercising due diligence could  ____________________ 2Yell Forestry Products, Inc. v. First State Bank, 853 _____________________________ _________________ F.2d 582 (8th Cir. 1988) may represent the closest authority in point. We agree with appellants that it is distinguishable on its facts but believe that it comports with our own view that the courts have authority to fashion appropriate limitations on collateral attacks while reserving the possibility that in some cases they may be justified. -11- -11- have learned enough to raise their present contentions in opposing confirmation.3 The appellants do not even attempt to undermine the finding, but blandly assert that they had "no obligation" to discover that they had been "lied to." In this context appellants are mistaken. Because the alleged inaccuracies could have been, and in part were, litigated in the bankruptcy court, we think that court was entitled to prohibit a new (albeit indirect) attack upon the disclosure statement it had approved. Whether or not such an attack is literally forbidden by either section 1125(d) or section 1125(e) is debatable; but against the background of these provisions, and the policies of chapter 11, we think it evident that allowing such an attack would disrupt Congress' detailed scheme for approval of disclosure statements and reorganizations, and would frustrate the proper administration of the Bankruptcy Code. If there are substantial errors in a disclosure statement, the opponents in the reorganization have every incentive to raise them while the disclosure statement or proposed plan can still be modified; the statute itself points to the importance of a single, definitive approval process. E.g., 11 U.S.C. 1125-26. Conversely, putting to ____  ____________________ 3The bankruptcy court made this clear by reserving the possibility of a post-reorganization fraud suit based on "secret fraud," 148 B.R. at 720, which we take to mean fraud that a plan opponent could not reasonably have discovered at the time of the reorganization. Id. ___ -12- -12- one side the possibility of secret fraud, the Bankruptcy Code looks not only toward repose for a confirmed plan, 11 U.S.C. 1144, but toward protecting those who have participated in the development of execution of the plan. See 11 U.S.C.  ___ 1125(d), (e); H. Rep. No. 595, 95th Cong., 2d Sess. 236 (1978). In acting to protect its prior proceedings, the bankruptcy court acts in an equitable capacity. Later suits that threaten to undermine a bankruptcy judgment are not merely the concern of the individual litigants; the willingness of future claimants and creditors to compromise in chapter 11 proceedings depends on giving the reorganization court's approval a due measure of finality. And in determining how much finality is due, equitable considerations and policy concerns can properly justify results that are not literally compelled by statutory language. Absent substantial new evidence of fraud, there is no ___ reason why Congress would have wished, or the courts should permit, participants who actively participated in the reorganization to relitigate in later civil actions previously raised issues about the adequacy of the disclosure statement, or to reserve for such actions claims that feasibly could have been made in the reorganization. The courts have ample authority to infer restrictions necessary -13- -13- to make Congress' plan work. Cf. Yell Forestry Products, 853 ___ ______________________ F.2d at 584. The restriction inferred in this case is both narrow and--as the facts of this case illustrate--amply justified. Res judicata principles were the subject of discussion ____________ by the bankruptcy and district courts and of extensive briefing in this court, so it may be helpful to explain why we have chosen not to pursue this line of reasoning. It is quite true, as appellees assert, that the bankruptcy court did in confirming the plan make explicit findings that the plan was proposed, and its acceptance was solicited, in good faith. See 148 B.R. at 707. The latter finding dovetails ___ with the good faith requirement that triggers safe harbor protection for the private appellees, and might at first glance seem to resolve the case against them.4 But the res judicata argument leads into a briar patch ____________ of problems. Putting aside the appellants' doubtful claim that the good faith finding in question was not "necessary" to the result, the appellants argue that collateral estoppel should not apply because mootness prevented them from obtaining review of the confirmation in this court. See In ___ __ re Public Service Company of New Hampshire, 963 F.2d at 471- ___________________________________________  ____________________ 4The State of New Hampshire is not covered by the safe harbor provision--not being a "person" under chapter 11, 11 U.S.C. 101(41)--although appellants have never explained why they think that the state is responsible for any mistakes in the disclosure statement. -14- -14- 75. The appellees respond that mootness was caused by appellants' failure to seek a stay of the reorganization while appealing the confirmation. Appellants say they could not afford the bond. Even if we resolved these issues in favor of appellees, which we might well do, there is a further more basic problem in invoking collateral estoppel. If we were dealing with a true case of secret fraud, the same concealment that was the gravamen of the collateral attack would likely have constituted a fraud on the reorganization court itself. This would not vitiate the confirmation order, unless challenged within 180 days, 11 U.S.C. 1144, but it would raise very serious concerns about giving collateral estoppel effect to any finding of good faith that rested upon the same fraudulent concealment. See Restatement (Second), Judgments ___ 28(5)(c), 70 (limitations on later use of judgment procured by fraud). We are not saying that the collateral estoppel defense is entirely circular; but if appellees had fraudulently __ concealed critical information from the reorganization court, it is not clear that merely pointing to a prior good faith finding by the same court (made in the same state of ignorance) would resolve the matter. By contrast, the route we follow to affirmance--that appellants could and should have litigated their inaccuracy claims in the reorganization -15- -15- forum--does not depend on any prior good faith findings by the reorganization court but on what we see before us today. Our determination also does not depend on the literal language of the safe harbor provision but on the broader policies of chapter 11 and on considerations of equity. The determination therefore applies with equal force to comparable claims against the State of New Hampshire and its officials, even though the state itself is technically not covered by section 1125(e). We have no occasion to consider the Eleventh Amendment defense that the bankruptcy court adopted as an alternative ground for precluding suit against the state. III. CONCLUSION The bankruptcy court was forebearing in its decision not to punish the apparent contempt of its injunction. It would be unwise for appellants to take our present decision as an invitation to invent new collateral attacks on the reorganization plan that purport to skirt the injunction. Litigation is a device for settling disputes, not for prolonging them to the point of abuse. Cf. Fed. R. Civ. P. ___ 11. Affirmed. ________ -16- -16-