**D. PATRICK, INC., an Indiana corporation, Plaintiff–Appellant,**

v.

**FORD MOTOR COMPANY, a Delaware corporation, Defendant–Appellee.**

No. 92–2516.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1993.

Decided Oct. 20, 1993.

David A. Given, Alan L. McLaughlin, Baker & Daniels, Indianapolis, IN, and James J. Kaufman and Michael A. Green, Barefoot & Kaufman, Wilmington, NC, for plaintiff-appellant.

Evan E. Steger, Ice, Miller, Donadio & Ryan, Indianapolis, IN, for defendant-appellee.

Before EASTERBROOK and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ILANA DIAMOND ROVNER, Circuit Judge.

D. Patrick, Inc. ("Patrick"), operates a Ford Motor Company ("Ford") dealership in Evansville, Indiana. After Ford notified Pat-

rick that it planned to open a second Evansville dealership, Patrick asked the district court to find Ford in contempt of a 1979 settlement agreement between Ford and Patrick's predecessor-in-interest. The court denied Patrick's motion for a preliminary injunction and dismissed the contempt claim. Patrick appeals, and we affirm.

## I. FACTS

In 1978, Patrick's predecessor, Key Motors, Inc. ("Key"), sought to enjoin Ford from terminating its 1972 sales and service agreement. After the court entered a preliminary injunction, the parties settled the suit. The district court dismissed the case with prejudice on September 12, 1979, but retained jurisdiction "for the purposes of the enforcement of [the settlement] agreement and subject to the contempt powers of this court in the event of a violation thereof."

The settlement agreement permitted Key to open a branch dealership at a location in eastern Evansville. The agreement went on to provide that:

> After a Market Representation Planning Study of the Evansville area has been conducted, the results of that study will be taken into consideration by Ford in determining whether Key's branch will continue and/or whether a second Ford dealership will be established in the Evansville area.... In the event, as a result of the Market Representation Study, Ford concludes ... that a second Ford dealership should be established in the Evansville area and that Key's branch must be closed, Key shall close its branch within two (2) years from the date of that determination, but such closing need not occur prior to three (3) years from the date of the settlement....

At the time the parties entered into this agreement, Key's dealership was located in downtown Evansville. Although the agreement permitted Key to open a branch location on Evansville's east side, Key elected not to do so immediately. In 1981, Ford conducted a Market Representation Planning ("MRP") study, which concluded that eastern Evansville was becoming the preferred market area. The study did not recommend a second dealership for the Evansville area "at this time," but suggested that Key relocate to the east side. Key declined to relocate, but did seek permission to open an east-side branch location as envisioned by the settlement agreement.

Ford approved Key's request in 1982, and the branch opened later that year. Unlike the downtown dealership, the branch location was a sales facility only and did not offer customer service and repairs. On July 28, 1982, Key merged with D. Patrick Imports, Inc., to form Patrick, which assumed control over both the downtown dealership and the east-side branch.

In 1985, Patrick moved the branch to another location on the east side of Evansville. In a January 21, 1987 letter retroactively approving the move, Ford stated:

> This consent is given subject to the condition that such additional place of business will be discontinued if so requested upon 2 years' written notice by the Ford Division if a market study of the Evansville market determines the need for a second Ford dealership in the Evansville area.

Patrick's president, D. Patrick O'Daniel, testified at the preliminary injunction hearing that Patrick had not contested this condition.

Ford conducted another MRP study in 1987 and concluded that a second full-service dealership should be opened on Evansville's east side. Ford advised Patrick of its decision on March 16, 1988 and encouraged Patrick to relocate its full-service dealership to the east side. Had Patrick done so, Ford would have assigned the downtown area to a new dealer. Although Ford initially asked Patrick to respond to the offer by November 15, 1988, it extended the deadline to January 5, 1989 when Patrick asked for more time.

When Patrick had not accepted the offer by January 5, 1989, Ford decided to appoint a new dealer for the east side. In a letter dated March 19, 1989, Ford apprised Patrick of its decision and requested that Patrick close its east-side branch within two years.

In accordance with its sales and service agreement, Patrick appealed the decision to Ford's Dealer Policy Board. On November

28, 1989, the Board affirmed the company's decision to close Patrick's branch location in favor of a second full-service dealership. However, the Board agreed to delay the opening of the new dealership until January 1, 1992, allowing Patrick to keep its branch open for nearly one additional year.

On December 20, 1991, Patrick filed a five-count complaint under the docket number assigned to Key's 1978 suit, seeking to enjoin Ford from opening the second fullservice dealership. Count Two of that complaint alleged that Ford was in contempt of the 1979 settlement agreement. The other four counts asserted claims for breach of contract and estoppel, as well as alleged violations of the Federal Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–1225, and the Indiana Deceptive Franchise Practices Act, Ind.Code §§ 23–2–2.7–1 *et seq.*, and Motor Vehicle Unfair Practices Act, 9–23–3–1 *et seq.* The district court determined that these additional counts should be pursued in a separate action, because they did not arise under the 1979 settlement agreement. Patrick does not appeal that determination, and therefore only the court's disposition of Count Two, the contempt claim, is at issue here.

Patrick argued that Ford had violated the 1979 settlement agreement by seeking to open a second full-service dealership in Ev-•ansville, even though the 1981 MRP study had concluded that a second dealership should not be opened. In other words, Patrick contended that the settlement agreement allowed for only one MRP study and that once Ford decided not to open a second dealership based on that study, it could not revisit the question.

Patrick moved for a preliminary injunction preventing Ford from opening a second dealership and closing Patrick's east-side branch. After an evidentiary hearing, the district court denied Patrick's motion and dismissed the contempt claim on its merits. The court found as a matter of law that the 1979 settlement agreement did not limit Ford to only one market planning study or one decision as to a second dealership, as Patrick contended. Instead, the court found that Ford had complied with the terms of the settlement agreement in all respects.[1]

## II. ANALYSIS

### A. *Rendering a Final Judgment Based on the Preliminary Injunction Hearing*

Patrick initially challenges the district court's dismissal of his contempt claim based solely on the evidence adduced at the preliminary injunction hearing, without prior notice that the court intended to render a final decision on the merits of the claim. Patrick correctly notes that "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Federal Rule of Civil Procedure 65(a)(2) does afford the district court discretion to consolidate the merits with the preliminary injunction hearing. "Before such an order may issue, however, the courts have commonly required that 'the parties should normally receive clear and unambiguous notice ... either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.'" *Id.* (quot-

---

1. The district court found preliminary injunctive relief unwarranted not only because Patrick's contempt claim lacked merit, but also on the ground that Patrick's two-year delay in bringing suit after the Dealer Policy Board affirmed Ford's decision to open a second dealership was inconsistent with its purported need for a preliminary injunction. As set forth below, we agree that Patrick's contempt claim was without merit; consequently, we discern no error in the denial of Patrick's request for a preliminary injunction. "If a plaintiff seeking a preliminary injunction cannot show that his chance of prevailing on the merits is 'better than negligible,' a court must deny the injunction regardless of how heavily

any other equities may weigh in the plaintiff's favor." *Illinois Council on Long Term Care v. Bradley*, 957 F.2d 305, 307 (7th Cir.1992) (citing *Centurion Reins. Co. v. Singer*, 810 F.2d 140, 145 (7th Cir.1987)), *cert. denied,* — U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). Because Patrick cannot point to any court order that expressly and unequivocally precludes Ford's decision to open a second dealership, its contempt claim was doomed from the outset. For this reason, we need not reach Patrick's argument that the district court placed too much weight on its delay in seeking a preliminary injunction, nor need we consider Patrick's challenge to certain factual findings relating to the matter of delay.

ing *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972) (Stevens, J.)). *See also Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1277–78 (7th Cir.1987); *Paris v. U.S. Dept. of Housing and Urban Dev.*, 713 F.2d 1341, 1345–46 (7th Cir.1983). Although the district court here did not advise the parties of its intent to reach the merits of the contempt claim, we nonetheless find no error in its decision to dispose of that claim without further hearing.

We begin with the observation that although Patrick initiated the proceeding below with a "complaint" purporting to state a cause of action for civil contempt, in fact, "there is no such thing as an independent cause of action for civil contempt." *Blalock v. United States*, 844 F.2d 1546, 1550 (11th Cir.1988) (per curiam). Instead, "[c]ivil contempt proceedings are considered to be a part of the action from which they stem" (4 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1017 at 71 (1987)), their purpose being to secure compliance with a prior court order (*Blalock*, 844 F.2d at 1550; *Thompson v. Cleland*, 782 F.2d 719, 721 (7th Cir.1986)). Although such proceedings are subject to the Federal Rules of Civil Procedure (*In re Grand Jury Proceedings Empanelled May 1988*, 894 F.2d 881, 882 (7th Cir.1989)), given their supplemental character, the court normally will proceed in a more summary fashion than it would on an ordinary complaint (11 Wright & Miller, § 2960 at 590; *see also In re Grand Jury Matter*, 906 F.2d 78, 85–86 (3d Cir. 1990), *cert. denied*, 498 U.S. 980, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990)). Due process may entitle the parties to discovery and an evidentiary hearing to the extent necessary to resolve relevant factual disputes. *See United States v. City of Northlake, Ill.*, 942 F.2d 1164, 1170 (7th Cir.1991); *Grand Jury Proceedings Empanelled May 1988*, 894 F.2d at 882–83. However, because the contempt proceeding is concerned solely with whether or not the respondent's conduct violates a prior court order, the parties cannot reasonably expect to litigate to the same extent that they might in a new and independent civil action. *See generally Ferrell v. Pierce*, 785 F.2d 1372, 1383 (7th Cir.1986) (per curiam)

(district court "has a great deal more latitude in enforcing its own decrees in a contempt proceeding," although it must allow party charged with contempt an opportunity to contest the issue); *see also Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1025 (7th Cir.1991) (no evidentiary hearing necessary where relevant facts were not in dispute), *cert. denied*, —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992); *American Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 519–20 (7th Cir.1982) (amount of time parties given to prepare for contempt hearing is a matter of discretion and will vary with circumstances).

Patrick's request for a finding of contempt, like its motion for a preliminary injunction, turned on a single question: did the settlement agreement allow Ford to conduct more than one MRP study and to decide more than once about a second dealership in Evansville? On its face, this question did not call for a detailed factual inquiry; it simply required the court to interpret the settlement agreement. The district court therefore acted reasonably in cutting to the chase. "Once it becomes clear that additional proceedings are pointless, the court should bring the case to a close." *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir.1991); *see also Saukstelis v. City of Chicago*, 932 F.2d 1171, 1174 (7th Cir.1991) (affirming district court's denial of preliminary injunction and directing entry of judgment for the defendant where plaintiffs' case was without merit).

Moreover, a party contesting the entry of final judgment at the preliminary injunction stage must demonstrate prejudice as well as surprise. *Socialist Workers Party v. Illinois State Bd. of Elections*, 566 F.2d 586, 587 (7th Cir.1977) (per curiam), *aff'd on other grounds*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). Here, Patrick was not prejudiced by the lack of notice that the district court would decide the merits of its contempt claim based on the evidence presented at the preliminary injunction hearing. The facts material to the contempt issue were not disputed; the parties merely disagreed as to the proper construction of the

settlement agreement. *See id.* The preliminary injunction hearing supplied the district court with everything it needed to resolve this dispute—indeed, despite Patrick's criticism of the district court's decision to dispose of the contempt claim, its appellate brief identifies no additional evidence or argument it would have presented had it known that the court would reach the merits of its claim.

 At oral argument, Patrick's counsel suggested that it might have taken discovery concerning the validity and good faith of Ford's decision to open a second dealership. Yet those matters have no bearing on whether or not the settlement agreement allowed only one opportunity to make this decision. *Cf. Lelsz v. Kavanagh,* 673 F.Supp. 828, 839 (N.D.Tex.1987) (good faith not a sufficient defense to contempt). Patrick's attorney also suggested that evidence concerning the intent of the parties might have been relevant to this question. But a party can only be held in contempt for behavior clearly prohibited by a court order " 'within its four corners.' " *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 237, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975) (quoting *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1758, 29 L.Ed.2d 256 (1971)); *see also Stotler and Co. v. Able,* 870 F.2d 1158, 1163 (7th Cir.1989) ("To hold a party in contempt, the district court must be able to point to a decree from the court which set[s] forth in specific detail an unequivocal command which the party in contempt violated.") (internal quotations and citations omitted). Thus, although it might otherwise be appropriate for a court to consider extrinsic evidence of the parties' intent when the plain language of a judicially approved settlement agreement is unclear (*City of Northlake,* 942 F.2d at 1167–68), the very ambiguity necessitating such evidence rules out the possibility that the respondent has violated the *unequivocal* command of a court order. *See Ferrell,* 785 F.2d at 1379 & n. 6; *North Shore Lab. Corp. v. Cohen,* 721 F.2d 514, 521 (5th Cir.1983); *Boatman v. Bowen,* No. 78 C 299, 1988 WL 6957, at *2–3, 1988 U.S.Dist. LEXIS 595, at *7, 9 (N.D.Ill. Jan. 25, 1988).

The district court therefore did not err in resolving the merits of Patrick's contempt claim after the preliminary injunction hearing. Once the court had concluded that the settlement agreement could not be interpreted as Patrick urged, further proceedings were unnecessary.

### B. Merits of the Contempt Claim

 Having concluded that the district court did not err in reaching the merits of Patrick's contempt claim, we must also consider whether its resolution of that claim was correct. Although the court's decision not to hold a party in civil contempt is normally not an appealable final order, we have jurisdiction here because the district court's ruling left no other issue remaining. *Stotler and Co.,* 870 F.2d at 1163 n. 4. Our review is deferential, however. We will not reverse the district court's ruling on a civil contempt petition "unless the result was clearly erroneous or unless we find an abuse of discretion by the district court." *Laborers' Pension Fund v. Dirty Work Unltd., Inc.,* 919 F.2d 491, 494 (7th Cir.1990); *see also Stotler and Co.,* 870 F.2d at 1163.

 Initially, we have substantial doubt as to whether the settlement agreement at issue here is even amenable to enforcement through contempt. In order to prevail on a contempt petition, the complaining party must demonstrate by clear and convincing evidence that the respondent has violated the express and unequivocal command of a *court order. Stotler and Co.,* 870 F.2d at 1163. In this case, the district court never entered an order spelling out the parties' rights and obligations with respect to a second dealership; only the settlement agreement purports to do that. Standing alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt. *See People Who Care v. Rockford Bd. of Educ. School Dist. No. 205,* 961 F.2d 1335, 1337 (7th Cir.1992); *In re Masters Mates & Pilots Pension Plan and IRAP Litigation,* 957 F.2d 1020, 1025 (2d Cir.1992). Here, the parties stipulated that they "shall be and remain subject to the jurisdiction of this court for purposes of the enforcement of such settlement agreement and subject to the con-

tempt powers of this court in the event of a violation thereof" (R. 3), and in dismissing the suit, the court approved the stipulation and did retain jurisdiction to enforce the settlement agreement through contempt (R. 4). But the court did not set forth any of the provisions of the settlement agreement in its order.

Federal Rule of Civil Procedure 65(d) requires that the terms of any injunctive order be recited in the order itself:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and *not by reference to the complaint or other document,* the act or acts sought to be restrained....

(Emphasis supplied). We have construed Rule 65(d) strictly, requiring that the provisions of a settlement agreement be expressly set forth in a judicial order before they may be enforced in a civil contempt proceeding. In *H.K. Porter Co. v. National Friction Prod.,* 568 F.2d 24 (7th Cir.1977), the parties had executed a settlement agreement specifying their future obligations and providing that "[t]he Court shall enter a decree that said Settlement Agreement is the judgment in [the case]." 568 F.2d at 25. The district court obliged with an order stating:

> The Court having examined ... the Settlement Agreement ... hereby approve[s] the said Settlement Agreement and indicates its approval thereon and orders a copy filed as a part of this proceeding.
>
> The Court further orders ... that the said Settlement Agreement is hereby adopted and made a part of the decree by reference as the judgment herein.

*Id.* We found the court's failure "to spell out in a decree's text the specific obligations resting on the defeated litigant ... fatal to any contempt proceeding...." *Id.* at 27. The fact that the parties' obligations were set forth in the settlement agreement did not remedy the defect:

> When the question of contempt is raised, just as it is inadequate if the decree has merely referred to a statute, even though the statute clearly created the legal obligation which warranted the decree[,] so it is not enough for enforcement by contempt proceedings if the decree merely referred to a contract, even though the contract clearly created the legal obligation which warranted the decree.

*Id.* at 27–28 (citations omitted). *Accord Thomas v. Brock,* 810 F.2d 448, 450 (4th Cir.1987); *contra Davis v. City and County of San Francisco,* 890 F.2d 1438, 1450 (9th Cir.1989). Thus, although in this case the district court retained jurisdiction to enforce the settlement agreement, that was not sufficient to transform the agreement into a court order enforceable through a contempt proceeding. *See Hanna v. Lane,* No. 84 C 1635, 1989 WL 56898, at *5 1989 U.S.Dist. LEXIS 5910, at *12–14 (N.D.Ill. May 22, 1989); *Smith v. Schermerhorn,* No. 85 C 7372, 1989 WL 13252, at *1, 1989 U.S.Dist. LEXIS 1571, at *3–4 (N.D.Ill. Feb. 10, 1989); *Boatman,* 1988 WL 6957, at *2–3, 1988 U.S.Dist. LEXIS 595, at *7–9; *Central States Southeast and Southwest Areas Pension Fund v. Richardson Trucking, Inc.,* 451 F.Supp. 349, 350 (E.D.Wis.1978).[2] As we observed in *H.K. Porter,* "Rule 65(d) is no mere extract from a manual of procedural practice. It is a page from the book of liberty." 568 F.2d at 27.

Even overlooking that problem, we do not read the agreement to provide unequivocally for only one MRP study and one decision on the second dealership as Patrick maintains. Although the agreement indicates that Ford would determine whether to open a second dealership after conducting "a" study, it does not expressly limit Ford to a single study nor does it suggest that Ford would have only one opportunity to decide on the second dealership. Indeed, in view of the open-ended time frame of the agreement, the construction that Patrick urges would be illogical. A more plausible reading of the agreement is that Ford remained free to reevaluate the need for a second dealership periodically, but

---

2. Of course, when enforcement problems arise, courts do retain the discretion to amend their decrees to include express commands sufficient to support future contempt proceedings. *Hanna v. Lane,* 1989 WL 56898, at *5, 1989 U.S.Dist. LEXIS 5910, at *14; *Smith v. Schermerhorn,* 1989

that each time it did so it must conduct another MRP study and take the results into account.[3] At best for Patrick, the agreement is ambiguous in this regard, and as we have already noted, that ambiguity precludes a finding of contempt. *Ferrell,* 785 F.2d at 1379 & n. 6; *North Shore Lab.,* 721 F.2d at 521; *Boatman,* 1988 WL 6957, at *2–3, 1988 U.S.Dist. LEXIS 595, at *7, 9.

## III. CONCLUSION

Ford did not violate any unequivocal judicial command in conducting the 1987 MRP study and deciding at that time to open a second Evansville dealership. The district court therefore did not abuse its discretion in denying Patrick's motion for a preliminary injunction or in dismissing the contempt claim.

AFFIRMED.

WL 13252, at *2, 1989 U.S.Dist. LEXIS 1571, at *4.

**3.** The record thus indicates that Ford has conducted at least three MRP studies of the Evansville area: in 1975, 1981, and 1987.