**In re Ronald ZIPPER, Debtor.**

**HEALTH MIDWEST OFFICE FACILITIES CORPORATION, Plaintiff,**

v.

**Ronald ZIPPER and David R. Browning, Defendants.**

**Bankruptcy Case No. 92-20971-11. Adversary No. 92-6085.**

United States Bankruptcy Court, D. Kansas.

March 31, 1997.

---

Patrick K. McMonigle and Stephen J. Bahr of Dysart Taylor Lay Lewandowski & Cotter, P.C., Kansas City, MO, for the Plaintiff.

Donald E. Bucher of Gould, Thompson, Carr & Bucher, P.C., Kansas City, MO, and James W. Fletcher of Wyrsch Hobbs Mirakian & Lee, P.C., Kansas City, MO, for Defendant Ronald Zipper.

David R. Browning, pro se.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION TO AMEND OR RECONSIDER [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

This dispute arose in 1992 before the Honorable Benjamin E. Franklin. Ronald Zipper, the debtor, and his then attorney, David R. Browning, were litigating with plaintiff's predecessor, Medical Center Park, Inc., and its attorney, Patrick K. McMonigle. The controversy focused on Medical Center Park's right to possession of a building and personal property it had leased to Dr. Zipper, an orthopedic surgeon. During the trial, Dr. Zipper agreed to a settlement and on June 8, 1992, counsel announced the terms of the agreement on the record in the presence of Dr. Zipper. Counsel approved and caused the filing of a Journal Entry memorializing the proceeding on June 19, 1992; however, the Journal Entry varied from the agreement by providing for the turnover of keys to the building, a point not mentioned when the agreement was recited before Judge Franklin.

### Contempt

On July 7, 1992, Medical Center Park filed an adversary complaint against Zipper and Browning.[2] It averred they had breached the agreement, *inter alia*, by refusing access to the building, refusing to turn over keys, removing furniture and fixtures, and damaging the building. According to the complaint, these contract breaches injured the plaintiff and violated Judge Franklin's order of June 19, 1992. Therefore, plaintiff believed itself entitled to damages for civil contempt for Dr.

Zipper's failure to comply with the Journal Entry of June 19.

### Trial

Trial on the contempt charge took place on March 21 and 22, May 14, and September 27, 1996. Plaintiff's evidence proved that between June 10, 1992, and July 2, 1992, Dr. Zipper did indeed breach the settlement agreement as alleged, even going so far as to remove lavatory sinks attached to the building and replacing them with inferior sinks improperly installed. Some of his acts of nonperformance occurred between June 8, 1992, the date counsel put the agreement on the record, and June 19, 1992, the date counsel filed the Journal Entry. Others took place after the filing of the Journal Entry. As to many of his infractions, Dr. Zipper acted on the advice of his then attorney, David R. Browning.

At the end of plaintiff's evidence on September 27, 1996, the Court sustained each defendant's Motion for Directed Verdict, treating them as Motions for Judgment as a Matter of Law under Fed.R.Bankr.P. 7052(c). In doing so, the Court stated the reasons for its ruling orally on the record in open court, referring to the contents of the transcript covering the settlement of June 8, 1992, and the terms of the Journal Entry filed June 19, 1992.

The Court found the settlement of June 8, 1992, failed as a sufficiently specific order upon which to base a finding of civil contempt. Judge Franklin was not asked to make the terms of the agreement an order of the court and did not do so. All he did was indicate he would approve the settlement: "All right. Then I will approve such when it is submitted. And this will be for the record, settled as per journal entry." [3] While the

---

1. The plaintiff, Health Midwest Office Facilities Corporation, appears by its attorneys, Patrick K. McMonigle and Stephen J. Bahr of Dysart Taylor Lay Lewandowski & Cotter, P.C., Kansas City, Missouri. Defendant Ronald Zipper appears by his attorneys, Donald E. Bucher of Gould, Thompson, Carr & Bucher, P.C., Kansas City, Missouri, and James W. Fletcher of Wyrsch Hobbs Mirakian & Lee, P.C., Kansas City, Missouri. Defendant David R. Browning appears on his own behalf.

2. After Medical Center Park, Inc., filed the adversary proceeding, it transferred its rights to

Health Midwest Office Facilities Corporation with the Court's approval. Health Midwest Office Facilities Corporation was then substituted for Medical Center Park, Inc., as plaintiff in the adversary.

3. Appendix "A" to Amended Supplemental and Explanatory Pretrial Order filed June 26, 1996, Partial Transcript of Proceedings held June 8, 1992, at 5.

settlement put on the record contained sufficient detail to inform Dr. Zipper of most of his duties under the agreement, it failed to inform him that if he breached the agreement, he would be violating a court order. Consequently, although Dr. Zipper breached the contract by deviating from its specific terms, in doing so he did not violate a court order that advised him the breach would constitute contempt of court.

The Court came to the same conclusion about the Journal Entry of June 19, 1992. Of course, it is an order, but it is not the kind of order that will support contempt if it is violated. Numbered paragraphs three and four of the order express the specific terms of the agreement that Dr. Zipper immediately breached. But the first sentence of paragraph three merely approves the stipulation: "The Court further approves the stipulation between the parties ..."[4] Paragraph four begins, "The Court further approves and finds reasonable the following agreement between Debtor and MCP...."[5] Then the six subparagraphs of paragraph four, labeled (a) through (f) inclusive, set forth the details of the agreement. Finally, the Journal Entry concludes: "WHEREUPON, this Order is entered this 19th day of June, 1992."[6] Although the order contained the terms of the agreement, it neglected to indicate to Dr. Zipper that the court had done anything more than approve an agreement. It did not command him not to breach his agreement and it did not inform him that if he did breach the agreement, he would be violating a court order. In short, the order lacked sufficient specificity as a command to support a finding of contempt upon its breach.

### Motion to Amend or Reconsider

Plaintiff responded to the September 27, 1996, ruling by filing a Motion to Amend or Reconsider on October 7, 1996. In the motion, plaintiff characterizes the ruling as holding that "a valid order (violation of which

order would be addressable by civil contempt) did not exist."[7] In making this claim, the motion focuses exclusively on Judge Franklin's order of June 19, 1992. The motion fails to address the fact that many, if not most, of Dr. Zipper's contractual breaches occurred between June 8 and the entry of the June 19 order. And it fails to discuss whether the June 19 Journal Entry can be applied to the actions of Dr. Zipper that occurred before the date of its entry.

### Case Analysis

The oral ruling cited the following cases: *In re Peck*, 155 B.R. 301 (Bankr.D.Conn. 1993); *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455 (7th Cir.1993); and *Consumers Gas & Oil, Inc. v. Farmland Industries, Inc.*, 84 F.3d 367 (10th Cir.1996). Plaintiff's motion questions the applicability of these cases to the facts of this case. The motion further comments on an additional case, *H.K. Porter Company, Inc. v. National Friction Products Corp.*, 568 F.2d 24 (7th Cir.1977), a case cited in *D. Patrick, Inc.*

In *H.K. Porter Company, Inc.*, the Seventh Circuit refused to find contempt.[8] Contrary to plaintiff's contention, the decision employs the principle recognized in the other cited cases, i.e., only an order that notifies affected parties that specific conduct is prohibited can be the basis of a civil contempt.

H.K. Porter Company, Inc. sued National Friction Products Corp. and Earl E. Figert to prevent infringement of its trade secrets and release of confidential information. The parties settled the case with the defendants agreeing not to sell certain compounds taken from H.K. Porter Company's formula. The agreement required that the Settlement Agreement itself be made a judgment of the court:

> The Court shall enter a decree that said Settlement Agreement is the judgment in Civil Action No. 4092.[9]

---

4. Journal Entry filed June 19, 1992, at 3.

5. *Id.*

6. *Id.* at 4.

7. Motion to Amend or Reconsider filed October 7, 1996, at 1.

8. 568 F.2d at 28.

9. *Id.* at 25 (quoting from the parties' Settlement Agreement).

Inexplicably, the court failed to make the terms of the agreement a judgment when it entered the order, although it incorporated the Settlement Agreement by reference:

> The Court having examined said Motion and the Settlement Agreement tendered therewith hereby approved [sic] the said Settlement Agreement and indicates its approval thereon and orders a copy filed as a part of this proceeding. The Court further orders ... that the said Settlement Agreement is hereby adopted and made a part of the decree by reference as the judgment herein.[10]

After National Friction breached the agreement, H.K. Porter Company sought unsuccessfully to prosecute a civil contempt action based on the order. The order was deficient as a predicate for contempt since it failed to command performance:

> [F]irst, there must have been disobedience of "an operative command capable of 'enforcement.' "[11]

The facts of the case at bar do not meet this requirement; neither the June 8 agreement nor the June 19 Journal Entry embody such an operative command.

The Tenth Circuit has adopted the *H.K. Porter* view in *Consumers Gas & Oil, Inc.*[12] In that case, the settlement agreement specifically prohibited either party from publishing information about the settlement. While the order approving the settlement included the details of the agreement, it failed to restrain either party from publishing information about the agreement. In denying relief, the court announced the need for the imprimatur of an injunction to create a consent decree enforceable by contempt:

> "Standing alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt. *D. Patrick v. Ford*

*Motor Co.*, 8 F.3d 455, 460 (7th Cir.1993). Rule 65(d) governs the form and scope of injunctive orders. "[T]he term 'injunction' in Rule 65(d) is not to be read narrowly but includes all equitable decrees compelling obedience under the threat of contempt." 11A Wright, Miller & Kane, *Federal Practice and Procedure* § 2955, at 309 (1995).[13]

As this quotation foreshadows, *D. Patrick, Inc.*,[14] also refuses to recognize just any order as a foundation for contempt. D. Patrick, Inc., was a Ford dealer whose predecessor had entered a settlement agreement with Ford in a 1972 action to enjoin Ford from terminating a sales and service agreement. The language of the settlement agreement did not prevent Ford from conducting more than one study to determine the need for a dealership on the east side of Evansville, Illinois. After the first study, Ford permitted D. Patrick, Inc., to continue as a dealer in east Evansville. Some years later, Ford conducted a second study upon which it based a decision to terminate the east Evansville dealership. D. Patrick filed a complaint under the old case number seeking a contempt ruling against Ford for breaching the agreement by conducting the second study. In refusing contempt, the court adhered to the rule requiring a prohibitive order:

> In order to prevail on a contempt petition, the complaining party must demonstrate by clear and convincing evidence that the respondent has violated the express and unequivocal command of a *court order*.[15]

The final case to be considered is *In re Peck*,[16] the only bankruptcy case among those cited. It is factually distinguishable from the case at bar, but its holding is consistent with this decision.

Arnold Peck, an individual Chapter 11 debtor, proposed a plan of reorganization to which creditors objected. At the time he

---

10. *Id.* (quoting from the parties' Settlement Agreement).

11. *Id.* at 26 (citation omitted).

12. *Consumers Gas & Oil, Inc. v. Farmland Industries, Inc.*, 84 F.3d 367 (10th Cir.1996).

13. *Id.* at 370.

14. *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455 (7th Cir.1993).

15. *Id.* at 460.

16. *In re Peck*, 155 B.R. 301 (Bankr.D.Conn. 1993).

was president, a director and a controlling stockholder of Fairway Land Acquisition Company ("FLAC"). On October 15, 1990, Peck and the creditors agreed to a Stipulation recognizing the creditors' objections to his plan and providing that he would do nothing to bring FLAC under the jurisdiction of the bankruptcy court. Relying on the Stipulation, the objecting creditors acceded to the plan. Later, Peck authorized FLAC's bankruptcy filing contrary to the terms of the Stipulation, which prompted creditors to seek a contempt order.

The Stipulation stated expressly that it would not be effective unless the court approved it and made it the order of the court:

> This Stipulation shall not be effective unless and until it has been executed by the parties hereto and *submitted to the Bankruptcy Court and approved and SO ORDERED by the Bankruptcy Court.*[17]

Contemporaneously with the settlement, the parties submitted an order to the court, as the Stipulation contemplated. The order approved the Stipulation, but it did not make the terms of the Stipulation "orders" of the bankruptcy court. Rather, it merely approved its terms:

> [I]t is hereby ORDERED that the Stipulation attached hereto as Exhibit A and all ... the terms and conditions contained therein are approved.[18]

Although the order did not set out the terms of the Stipulation, except by reference, the court held that Peck's breach of the Stipulation violated the order and was civil contempt. It ruled that the order was a sufficient expression of command or restraint because the parties had actually bargained for such an order when they agreed on the Stipulation:

> The parties bargained for enhancing the Stipulation with the force of a court order. That intent is demonstrated by Paragraph 11, which provided that the Stipulation would not be effective unless and until it was "so ordered" by the court, and by Paragraph 8, which provided that "the pro-

visions of the Stipulation," *i.e., all* of the provisions, would remain binding on the parties irrespective of the terms of the confirmed Plan.[19]

This bargain convinced the judge that the order satisfied the requirement of a command, even though it did not repeat the terms of the Stipulation.

### The Order

Nothing in the transcript memorializing the settlement on June 8 demonstrates an agreement, as in *Peck,* that the settlement would become an injunction or equitable order of restraint. Nor does the order of June 19, which the Court analyzed in its oral findings and conclusions, sound as a command against breach of the settlement agreement. Rather, at most it is an approval of a settlement agreement, a familiar event in bankruptcy cases in which the court is often called upon to consider whether a proposed settlement infringes upon rights of various constituencies or complies with Code provisions. If such an approval order is to be the footing for a finding of contempt, counsel must ensure that it contains language informing affected parties that they are within the structure of its commandments.

### Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion to Amend or Reconsider is denied. This Order supplements the findings and conclusions read into the record on September 27, 1996.

Attached to this order are (1) the partial transcript of the agreement entered on the record before Judge Franklin on June 8, 1992; (2) a copy of the Journal Entry of June 19, 1992; and (3) a copy of the partial transcript (pages 703 through 708 inclusive) of the Court's findings and conclusions made September 27, 1996, referring to the transcript of June 8, 1992, and to the Journal Entry of June 19, 1992, which are incorporated herein by reference.

---

**17.** *Id.* at 305 (quoting from the parties' Stipulation).

**18.** *Id.* (quoting from the parties' Stipulation).

**19.** *Id.* at 309.

ATTACHMENT

In re Ronald Zipper, Debtor.

No. 92–20971–11.

In the United States District Court, District of Kansas.

PARTIAL TRANSCRIPT OF PROCEEDINGS

BE IT REMEMBERED, that on this 8th day of June, 1992, the above-entitled matter came on regularly for hearing before the Honorable Benjamin E. Franklin, at the Federal Building, Room G–30, 812 North 7th Street, Kansas City, Kansas.

For the Debtor: Messrs. Browning & Campbell, P.C., 3640 South Noland Road, Suite 270, Independence, Missouri 64055, By: Mr. David R. Browning Ms. Margaret Sell

For the Creditor, Medical Center Park, Incorporated: Messrs. Dysart, Taylor, Penner, Lay & Lewandowski, P.C., 4420 Madison Avenue, Kansas City, Missouri 64111, By: Mr. Patrick K. McMonigle Mr. Scott M. Mann Mr. Howard D. Lay

THE COURT: Mr. McMonigle?

MR. McMONIGLE: May it please the Court. Mr. Browning and I over the lunch recess, I think have agreed to a disposition of the pending motions, as well as collaterally to the proceeding pending before Judge Hunter with respect to the possession claim against Dr. Zipper of the premises known as Parkway Medical Building. With Mr. Browning's permission, I will proceed with what I think is an outline of the agreement. I will also represent to the Court that I have agreed to reduce this to writing and submit it for approval of counsel and the Court.

THE COURT: All right.

MR. McMONIGLE: With respect to the motion for relief from stay the debtor is consenting to relief, and in consideration of the further terms of this agreement debtor is agreeing to the entry of a consent order with respect to possession only before Judge Hunter in the United States District Court for the Western District of Missouri. The creditor is agreeing in consideration of that and of the other undertakings of the parties set forth hereafter, to allow debtor to remain in possession of the Parkway Medical Building to and including July 31, 1992. The debtor is further consenting to the entry of an adequate protection order in the amount of $2,000 base rent per month for the months of May, June, and July, 1992, and debtor is further agreeing to pay the pass-through utilities for those months pursuant to such order.

The debtor is waiving the request for contempt citation against the creditor and its attorneys and to waive any claim for a specific performance with respect to the purchase of Parkway Medical Building. The debtor reserves, however, any and all claims for monetary damages debtor may possess or alleged to possess against the Creditor, Medical Center Park, Incorporated, or any parent or affiliated corporation, including Medical Center of Independence.

The debtor and creditor both agree that during the period of time that debtor will remain in possession of the building, that creditor will have reasonable access to the building, among other reasons, to inventory the fixtures, et cetera, that are in the building. They agree that the entrance of a possession order and a consent to the entrance of such an order before Judge Hunter shall not be deemed to establish any admission of any rights with respect to any monetary claim the parties may deem that exist between one or the other.

The parties are also agreeable, Your Honor—and the mechanics are possibly slightly uncertain—but that Debtor, Dr. Zipper and Creditor, Medical Center Park, Inc., will either agree as to what fixtures are to remain with the building, or what is not to remain as a fixture in the building, or in the event of any disagreement to submit such a dispute to a special master to be appointed by this Court to resolve that without another hearing before this Court.

MR. BROWNING: I believe Mr. McMonigle has accurately set out the agreement. What about sanctions?

MR. McMONIGLE: The debtor has also agreed to waive any motion for sanctions

against Medical Center Park, Inc., and we, Medical Center Park, Inc., is agreeing to waive any request for sanctions before Judge Hunter in the United States District Court for the Western District of Missouri. I think that is the basic intention, Your Honor.

THE COURT: You mean you are going to withdraw your motion to prohibit the use of cash collateral?

MR. McMONIGLE: We are, Your Honor.

THE COURT: All right. Mr. Browning?

MR. BROWNING: That is correct as we understand the agreement, Your Honor.

THE COURT: All right. And that will be executed by both counsel, and your clients have heard, understand, and agree to this?

MR. BROWNING: Dr. Zipper?

DR. ZIPPER: Yes, Your Honor.

MR. McMONIGLE: Mrs. Posey?

MRS. POSEY: Yes.

THE COURT: All right. Then I will approve such when it is submitted. And this will be for the record, settled as per journal entry.

MR. McMONIGLE: Very well, Your Honor.

THE COURT: All right. Thank you, gentlemen.

MR. McMONIGLE: Thank you, Your Honor.

MR. BROWNING: Thank you, Your Honor.

CERTIFICATE

State of Kansas

Wyandotte County

I, Shirley A. Buckley, a Notary Public within and for the State of Kansas, do certify that I was present at the proceeding as set forth in the caption sheet hereof; that I then and there took down in stenotype the proceedings had therein and that the foregoing pages constitute a true and correct transcript of such notes made at said time and place.

IN WITNESS WHEREOF, I have hereunto set my hand this 9th day of June, 1992. My commission expires May 15, 1994.

/s/ Shirley A. Buckley
Shirley A. Buckley,
Notary Public
within and for the State of Kansas

In re Ronald Zipper, Debtor.

No. 92–20971.

United States Bankruptcy Court, District of Kansas.

June 19, 1992.

*JOURNAL ENTRY*

This matter comes before this Court pursuant to a hearing commencing June 4, 1992, and continued and resumed June 8, 1992, pertaining to the following issues and requests for relief: (1) Motion of Creditor Medical Center Park, Inc. to Determine The Stay Order Does Not Apply Or, In The Alternative, Relief From Stay And For Adequate Protection; And Motion To Prohibit Use Of Cash Collateral; and (2) Debtor's Application For Contempt Citation For Violation Of Automatic Stay.

WHEREUPON, after the introduction of certain evidence by Debtor and Creditor Medical Center Park, Inc. ("hereinafter "MCP"), the parties, in person, and through their attorneys, entered into a Stipulation disposing of all issues raised by the aforedescribed Motions.

WHEREUPON, having heard the evidence, and upon the Stipulation entered into on the record by and between the parties, the Court enters the following Orders:

1. Creditor MCP's Motion To Determine The Stay Order Does Not Apply Or, In The Alternative, Relief From Stay And For Adequate Protection is granted. The Court finds, specifically, pursuant to a stipulation of the parties and in line with the holding of *In Re Jarman,* 118 B.R. 380 (Bankr.D.S.C. 1989), the Court orders that any stay under Section 362(a) should be and is lifted for cause as set forth hereafter.

The Court specifically finds that MCP shall be entitled to pursue the possession count (Count II) of its cause now pending in the United States District Court for the Western District of Missouri, Western Division, against Debtor, specifically Case Number 92–0149–CV–W–3.

The Court further specifically approves the Stipulation of record by Plaintiff and Defendant that Plaintiff shall confess judgment in the Western District of Missouri case for possession of the premises occupied by Plaintiff in Jackson County, Missouri, legally described as:

Lot 5, MEDICAL CENTER PARK, Lots 1 and 7 inclusive, a subdivision in Independence, Jackson County, Missouri,

and commonly known as "Parkway Medical Building" or 17421 Medical Center Parkway, Independence, Missouri.

2. Upon the stipulation of the parties, the Court further grants MCP's Motion for an Order for Adequate Protection and does enter an Order of Adequate Protection ordering Debtor to pay to MCP the sum of $2,000.00 per month for the months of May, June, and July, 1992, as base rent for the Parkway Medical Building, with the payments for the months of May and June to be made by July 10, 1992, and the base rent for the month of July, 1992 to be paid by July 10, 1992. The Court further orders that, as adequate protection, Debtor shall pay to Creditor MCP all utility, maintenance, and other charges incurred and paid by MCP during the months of May, June, and July, 1992, within ten (10) days of presentment of proof of such charges being incurred by MCP, as evidenced by invoices presented to Debtor. Such items, commonly known as "pass-throughs," and described in an expired written lease between MCP and Debtor dated January 15, 1988, shall be paid in addition to the $2,000.00 per month base rent.

3. The Court further approves the stipulation between the parties that so long as Debtor is in compliance with the Adequate Protection Order as set forth herein, MCP shall stay execution upon any possession judgment obtained in the United States District Court for the Western District of Missouri through the period ending July 31, 1992. Debtor agrees that he shall vacate the Parkway Medical Building on or before such date, and agrees that in failure thereof, or upon default by Debtor of its obligation under this Court's Adequate Protection Order, MCP shall be allowed to cause execution to issue from the United States District Court for the Western District of Missouri without further order of this Court.

4. The Court further approves and finds reasonable the following agreements between Debtor and MCP:

(a) Debtor waives equitable claims to the property, including any claim for a specific performance of any alleged agreement to sell the property to Debtor, and Debtor and MCP specifically agree that nothing set forth in their Stipulation or this Order shall be deemed to either waive or acknowledge the existence of any claim by either party for monetary damages due and owing from the other.

(b) Debtor specifically waives and withdraws its Application For Contempt Citation For Violation Of Automatic Stay against MCP, its representatives, and attorneys.

(c) Creditor MCP does waive and withdraw its Motion To Prohibit Use of Cash Collateral;

(d) Debtor agrees that Creditor MCP shall have keys and physical access to the Parkway Medical Building for lawful purposes upon furnishing Debtor twenty-four hours' advance request;

(e) Debtor agrees not to commit waste upon or about said property, and Debtor and Creditor MCP agree that all accessions and improvements to the Building, other than trade fixtures which may be removed by Debtor without damage to the Building and improvements, shall be and are the property of MCP upon Debtor's vacation of the premises;

(f) Pursuant to stipulation of the parties, in the event of any disagreement with respect to Debtor's right to remove a trade fixture or other item of property from Parkway Medical Building, the parties agree the status quo shall exist and Debtor

may request the appointment of a special master or arbitrator by this Court for a determination as to such issues, and agree that the decision of a special master or arbitrator shall be binding and conclusive upon the parties. The law of Missouri will govern the decision of the masters selected.

WHEREUPON, this Order is entered this 19th day of June, 1992.

/s/ Benjamin E. Franklin
HONORABLE
BENJAMIN E. FRANKLIN

Approved as to form and content:

BROWNING & CAMPBELL, P.C.

By David R. Browning

David R. Browning

Margaret Sells

Margaret Sells

3640 South Noland Road, Suite 270

Independence, Missouri 64055

ATTORNEYS FOR DEBTOR RONALD ZIPPER, D.O.

DYSART TAYLOR PENNER LAY & LEWANDOWSKI, P.C.

By Patrick K. McMonigle

Patrick K. McMonigle MO# 27161

Scott M. Mann

Scott M. Mann KS# 15132

4420 Madison Avenue

Kansas City, Missouri 64111

ATTORNEYS FOR CREDITOR MEDICAL CENTER PARK, INC.

Notice sent to:

Margaret Sells
3640 S. Noland Rd., # 270
Independence, MO 64055

Scott M. Mann
4420 Madison Avenue
Kansas City, MO 64111

U.S. Trustee
401 N. Market
Room 180
Wichita, KS 67202

Ronald Zipper
14119 W. 82nd St.
Lenexa, KS 66215
**Ronald Zipper, Debtor.**

**Health Midwest Office Facility Company, Plaintiff,**

-vs-

**Ronald Zipper, and David Browning, Defendants.**

**No. 92–20971.**
**Adversary No. 92–06085.**

United States Bankruptcy Court, District of Kansas.

PARTIAL TRANSCRIPT
OF PROCEEDINGS

BE IT REMEMBERED, that on this 27th day of September, 1996, the above-entitled matter came regularly on for hearing before the Honorable John T. Flannagan in Room 151 at the Federal Building, 500 State, Kansas City, Kansas.

APPEARANCES

The Creditor/Plaintiff appears by and through its attorneys of record, Mr. Patrick K. McMonigle and Mr. Stephen J. Bahr, 4420 Madison Avenue, Kansas City, Missouri.

THE COURT: The Court has heard the arguments of counsel on the motions characterized by Mr. Fletcher and Mr. Browning as motions for directed verdict which the Court will view as motions for judgment as a matter of law as though they were under Rule 50 of the Federal Rules of Civil Procedure although this is not a jury trial.

The contention of Dr. Zipper's counsel and Mr. Browning is that this is a criminal contempt rather than a civil contempt proceeding. The Court has viewed it as a civil contempt proceeding, and I believe that there's ample authority that damages to compensate a party wronged by a civil contempt are permissible and it's not just a matter of having an order that requires an affirmative act or a prohibitive act. There are a number of cases to that effect. The case of Conley versus Ventures at 851 F.2d 930 states, for example, the award of contemnor's profits was proper measure of damages to compensate copyright holder in a civil contempt

proceeding. So Court believes this to be a civil contempt where the standard of proof is clear and convincing evidence and if the Court could grant relief it could give compensatory damages.

The basis for the motion for contempt is the agreement put on the record before Judge Franklin on June 8, 1992, and then later incorporated to some degree in a journal entry filed June 19, 1992. The Court makes the following findings under Rule 7052 to satisfy that rule's requirements for findings of fact and conclusions of law and the record made here in open court will control with respect to the findings and conclusions in the event of an appeal and if there is a later journal entry, which there will be no doubt, it should recite that the requirements of Rule 7052 are satisfied by the Court's statements on the record here today.

Apparently, the parties were before Judge Franklin in June of 1992 and apparently put on evidence and were litigating several matters when they came to him and told him that there was an agreement. That agreement was placed on the record and we have a transcript of it in the record here as—we will call plaintiff's, although this is not a complaint. This was not an adversary proceeding initiated by complaint but rather by motion. Plaintiff's Exhibit No. 1 is a partial transcript of that hearing where the agreement was put on the record and at the beginning Mr. McMonigle states: "Mr. Browning and I over the lunch recess, I think, have agreed to a disposition of the pending motions as well as collaterally to the proceeding pending before Judge Hunter with respect to the possession claim against Dr. Zipper of the premises known as Parkway Medical Building. With Mr. Browning's permission, I will proceed with what I think is an outline of the agreement. I will also represent to the Court that I have agreed to reduce this to writing and submit it for approval of counsel and the Court."

Then Mr. McMonigle goes on and says that—what their agreement was with respect to stay relief which was basically that stay relief would be lifted so that a consent order could be entered in the proceeding before Judge Hunter respecting possession of the property.

Mr. McMonigle goes further then and on page 3 at the top says, "The debtor is further consenting to an entry of an adequate protection order in the amount of $2000 base rent per month for the months of May, June, and July, 1992, and debtor is further agreeing to pay the past due utilities for those months pursuant to such order." And skipping down on page 3 to the last paragraph, "The debtor and creditor both agree that during the period of time the debtor will remain in possession of the building the creditor will have reasonable access to the building, among other reasons, to inventory the fixtures, etcetera, that are in the building. They agree that the entrance to—of a possession order and a consent to the entrance of such an order before Judge Hunter shall not be deemed to establish any admission of any right with respect to any monetary claim the parties may deem that existed between one or the other." Over on page 4 and it says, "The parties are also agreeable, Your Honor, and the mechanicisms are possibly slightly uncertain but the debtor, Dr. Zipper, and creditor, Medical Center Park, Inc., will either agree as to what fixtures are to remain with the building or what is not to remain as a fixture in the building or in the event of any disagreement to submit such a dispute to a special master to be appointed by this Court to resolve that without another hearing before this Court."

And skipping on to page 5 the Court makes a statement after Mr. Browning has said, "That is correct as we understand the agreement, Your Honor." Judge Franklin says, "All right. And that will be executed by both counsel and your clients have heard, understand, and agree to this?" And doctor—Mr. Browning says Dr. Zipper with a question mark. Dr. Zipper says, "Yes, Your Honor. And then finally at the bottom the Court says, "All right, then I will approve such when it is submitted. And this will be, for the record, settled as per journal entry."

Now, I have recited these portions of the transcript before Judge Franklin because I believe that they show that this was the approval of an agreement but not the order

of the Court. There was nothing here to indicate to me that Judge Franklin was doing anything more than approving the stipulated agreement recited on the record that the parties had agreed to. The bankruptcy courts approve agreements quite often. As a matter of fact, we have a rule 9019 covering compromise and arbitration under which a trustee is required to bring before the Court any agreement he makes and have the Court approve it, and the purpose for that rule is to make sure that the various constituencies in the bankruptcy case are being properly and reasonably dealt with.

And from my construction of what happened on this occasion all that Judge Franklin was doing was saying, fine, I'm going to approve this agreement. He did not say that he was making it his order. Now, had the parties come in and said, Your Honor, we have an agreement and we want it to be made an order of the Court, specifically, that might have been a different matter. And there are other cases where consent judgments are made in that fashion. For example, in re Arnold Peck, 155, B.R. 301 where it states, for example, "This stipulation shall not be effective unless and until it has been executed by the parties hereto and submitted to the bankruptcy Court and approved and SO ORDERED by the bankruptcy Court." That was a condition of the agreement presented in that case, and it made it clear that the parties had in mind having the Court enter an actual order incorporating the terms of their agreement. That was not the case with respect to what happened in front of Judge Franklin on June the 8th, and that approval of the agreement cannot be the basis for a civil contempt order.

Turning now—and before I go on. It's also notable that in that agreement there was no mention of how the keys to the building were to be dealt with.

Well, as I mentioned before, the parties journalized their agreement with a document captioned journal entry and in evidence as Exhibit 2 of the plaintiff which was filed June 19, 1992. In the second paragraph it recites that the parties in person and through their attorneys entered into a stipulation disposing of all issues raised by the aforedescribed motion. Then down at the bottom in numbered Paragraph 1, "The Court finds specifically pursuant to a stipulation of the parties" and in line with the holding of in re Jarmine the Court orders that any stay under 362(a) should be and is lifted for cause as set forth hereinafter." Going on to the next paragraph, "The Court specifically finds that MCP shall be entitled to pursue the possession count, count two of this cause, now pending in the United States District Court for the Western District of Missouri, Western Division against debtor, specifically Case No. 92–0149–CV–W–3." And in the next paragraph the Court says, "The Court further specifically approves the stipulation of record by plaintiff and defendant that plaintiff shall confess judgment in the Western District of Missouri case, etcetera. Again, in Paragraph No. 2 on page 2 of that order, "Upon the stipulation of the parties, the Court further grants MCP's motion for order for adequate protection and does enter an order of adequate protection ordering debtor to pay to MCP the sum of $2000 per month."

The Court construes Paragraph 2 to be an order of Judge Franklin relating to adequate protection which certainly could have been the basis for a contempt finding it violated and all the other requirements were met.

Going on to page 3 of Paragraph 3 of the June 19 order, "The Court further approves the stipulation between the parties that so long as debtor is in compliance with adequate protection order as set forth MCP shall stay execution upon any possession judgment obtained in the United States District Court for the Western District of Missouri through the period ending July 31, 1992. Debtor agrees that he shall vacate the Parkway Medical Building on or before such date and agrees that in failure thereof and upon default by debtor of its obligation under this Court's adequate protection order MCP shall be allowed to cause execution to issue in the United States District Court for the Western District of Missouri without further order of this Court." That is couched in order language as well.

Then we go on to Paragraph 4 which begins, "The Court further orders and finds

reasonable the following agreements," and sets out A, B, C, D, E, and F. The first three matters relate to—A, B, and C relate to waivers of claims. Paragraph D says, "The debtor agrees that creditor MCP shall have keys and physical access to the Parkway Medical Building for lawful purposes upon furnishing debtor 24 hours advance request." This, as I noted before, was not a provision in the agreement recited on the record.

Then the next item is, Debtor agrees not to commit waste, etcetera, and goes on other than trade—well, maybe I should read it all. "Debtor agrees not commit waste upon or about said property and debtor and creditor, MCP, agree that all accessions and improvements to the building, other than trade fixtures which may be removed by debtor without damage to the building and improvements, shall be and are the property of MCP upon debtor's vacation of the premises." The Court views that as an agreement of the parties and not an order of the Court.

Paragraph F says "Pursuant to stipulation of the parties in the event of any disagreement with respect to the debtor's rights to remove a trade fixture or other item of property from Parkway Medical Building the parties agree the status quo shall exist and debtor shall request—may request the appointment of a special master or arbitrator by this Court for a determination as to such issues and agree that the decision of the special master or arbitrator shall be binding and conclusive upon the parties. The law of Missouri will govern the decision of the master selected." Again, the Court construes that to be an agreement of the parties which Judge Franklin approved and found reasonable according to the very first clause or sentence in Paragraph 4.

The very last thing in the order states, "Whereupon, this order is entered this 19th day of June, 1992." This order is entered. It does not state that the provisions under Paragraph 4 are orders of the Court, and therefore, this Court construes the order of June 19, 1992, not to be the kind of order that can be the basis for a contempt finding, a civil contempt finding.

Now the reasons the Court so finds can be found in the D. Patrick, Inc., versus Ford Motor Company Case, 8 F.3d 455, Seventh Circuit, 1993, decision which Mr. Fletcher cited in his brief. And that case is cited in Consumers Gas & Oil, Inc., versus Farmland Industries, Inc., 84 F.3d 367, Tenth Circuit, 1996, a decision by Circuit Judge Briscoe of Kansas. In the Consumers Gas case, there was a lawsuit which had been settled by agreement. The terms of which prohibited either party from publishing information about the settlement. And in this case the Circuit Court believed that Rule 65(d) which deals with injunctions and temporary restraining orders had to be read into the requirement for finding a civil contempt. The Tenth Circuit held that the agreement was a contract that required the imprimatur of an injunction to render it a consent decree enforceable through contempt. Since the order did not contain an injunction conforming to Rule 65(d) it could not be the basis for contempt.

Well in this proceeding, which is not an adversary proceeding, Rule 65(d) does not technically apply under the bankruptcy rules, at least I don't believe that it does, because I don't believe that Rule 9013 or 14—yes, Rule 9014 contested matters does not state that 7065 applies, so there's that little technical glitch but I don't believe that it's significant because other cases make it clear that you have to have a clear statement of conduct that is prohibited by the Court. It may not have to be an actual injunction and of course we are dealing with orders in the bankruptcy case where we make orders all the time that are not specifically under Rule 65.

There is another case: in re Peck, 155 B.R. 301, Bankruptcy District of Connecticut, 1993, where a proposed consent order said, "This stipulation shall not be effective unless and until it has been executed by the parties hereto and submitted to the bankruptcy court and approved and so ordered by the bankruptcy court."

Now Mr. McMonigle has cited to the Court the in re Snider Farms case for the proposition that the oral statements that were put on the record before Judge Franklin constituted sufficient order to be the basis for

contempt, but I believe the in re Snider Farms case is distinguishable in as much as it's clear on page 995 under Roman Numeral 2, Paragraph 1, findings of fact, the Court sets out a docket entry which directs—and by the way this was a Chapter 12 case—which directs and the Court was directing the debtor shall harvest such crops in normal course and deposit proceeds in attorney Devia's trust account or in the clerk's registry and apparently the debtor did not follow that directive. That was clearly an order of the Court whereas in this case we do not have a clear order of the Court. Rather what we have is the Court approving a settlement agreement.

So as far as contempt is concerned the motion of Dr. Zipper and Mr. Browning the Court treats as a motion for judgment as a matter of law are sustained. And the Court directs that Mr. Fletcher prepare a journal entry to that effect; however, that journal entry will not be effective for purpose of appeal until further proceedings in this case have been dealt with.

The Court is very disturbed by this case because here we have an agreement of the parties, one of whom is the debtor in a Chapter 11 case, which was spread on the record before the Court and approved, although not made an order of the Court but approved by the Court, and then from the evidence that's been presented so far, I don't believe anyone can dispute, that the debtor went out and breached the agreement egregiously and probably with the assistance and abetment of his then attorney. And this disturbs the Court because we don't like to have matters spread before us as agreements and then violated. As Mr. Fletcher said, he didn't argue for either.

So the question becomes whether or not this Court knew anything about that. And I don't know the answer to that right now and I'm going to ask you gentlemen to research it to tell me, and I direct your attention to in re Courtesy Inns Limited, Inc., 40 F.3d 1084, Tenth Circuit, 1994, a decision where the Circuit Court approved use of Bankruptcy Code Section 105 by the bankruptcy court where it felt sanctions were appropriate. So I will ask counsel repair to their respective libraries to see what the law is with respect to this Court's authority to enforce an agreement that has been presented and approved by the Court, although not made it's order, and then violated by a person who was involved as the debtor in the bankruptcy case.

I don't know whether the parts of the order of June 19th relating to the payment of adequate protection were violated or not and counsel can inform me about that. If there is still an issue there, we may include that in any of the briefs that are to be presented.

And in the meantime, as I said, there will be no entry of an appealable order with respect to the Court's ruling on the motion for judgment as a matter of law.

All right, that concludes the Court's findings and conclusions. I'll request whether counsel have any additional requests for findings of conclusions or any questions.

MR. McMONIGLE: Not at this juncture, Your Honor.

MR. FLETCHER: No, Your Honor.

MR. BROWNING: No, Your Honor.

(Whereupon, an off-the-record discussion was held.)

THE COURT: I understand from my clerk that there was an adversary and that the motion was filed for contempt. And I recall that now because that was what was being presented apparently to Judge Franklin. Although that is the case, I don't think it makes a great deal of difference under my ruling. It might make the case that I referred to that Judge Briscoe decided a little more applicable than otherwise would be.

MR. BROWNING: May it please the Court, Your Honor?

THE COURT: Yes.

MR. BROWNING: The cite on the Courtesy Inns was 40 F.3d—

THE COURT: 40 F.3d 1084, Tenth Circuit, 1994. And in general what I'm interested in knowing is what the extent of the Court's power is to enforce agreements that are put on the record and approved although not made orders of the Court.

We need to know when you want to complete the briefs that I have requested.

MR. BROWNING: I don't think any of us have any idea how difficult—

THE COURT: Thirty days enough time and if you have—

MR. McMONIGLE: Thirty days is adequate time.

THE COURT: —a problem you can ask for more time. Let's set this over for a status conference in about 30 days.

THE CLERK: November 7th at 11:30.

THE COURT: Anything further to come before the Court? Hearing nothing, Court is adjourned.

CERTIFICATE

I, JACQUELINE M. LEPAGE, Shorthand Reporter, do hereby certify that I was present at the taking of the hearing as set forth in the caption sheet hereof; that I then and there took down in stenotype the proceedings had at that time and the foregoing pages constitute a true and correct partial transcript of the stenotype notes made at the place and time.

IN WITNESS WHEREOF, I hereunto set my hand this 6th day of October, 1996.

/s/ Jacqueline M. LePage
JACQUELINE M. LEPAGE
Shorthand Reporter